IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARCHER MOTOR SALES CORPORATION, § § | | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3587 |
| | § | |
| MAZDA MOTOR OF AMERICA, INC., | § § | |
| Defendant. | § § | |

**MEMORANDUM AND ORDER**

This contract case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 28] filed by Defendant Mazda Motor of America, Inc. ("Mazda"), to which Plaintiff Archer Motor Sales Corporation ("Archer") filed a Response [Doc. # 33] and Mazda filed a Reply [Doc. # 34]. Archer, without requesting or obtaining leave of Court, filed a Sur-Reply [Doc. # 35], which the Court has considered. Having reviewed the record and applied governing legal authorities, the Court **grants** the Motion.

**I.    BACKGROUND**

Beginning in 1977, Archer sold new Mazda vehicles pursuant to a dealer sales and service agreement with Mazda. On June 23, 1986, Mazda sent a letter to Archer

in which Mazda represented that it would "offer the next Houston area Mazda point to the Archer organization" excluding four then-existing situations involving other existing Mazda dealerships.

In 1990, Mazda offered and awarded a new dealership to Joe Myers Motors-Three, Inc. d/b/a Joe Myers Mazda ("Joe Myers").

In 2002, Archer sold its Mazda dealership and terminated its business relationship with Mazda.

In January 2004, Russell & Smith Ford, Inc. ("Russell & Smith") presented a proposal to Mazda for a Houston-area dealership. Mazda provided Russell & Smith with the necessary application documents and advised that once the application had been approved by Mazda senior executives, Mazda would provide a Letter of Intent.

On July 29, 2004, Mazda sent Russell & Smith a letter stating that the application had been approved and offering a Houston-area dealership to Russell & Smith. Russell & Smith accepted the offer and approved the terms of the Letter of Intent the following day, July 30, 2004. On August 6, 2004, Mazda filed the Evidence of Franchise form with the Texas Department of Transportation indicating that Russell & Smith had been offered and was approved by Mazda as a Mazda-franchised dealer.

On October 8, 2004, Russell & Smith signed its final Dealer Agreement with Mazda and began operating as a Mazda dealership.

On October 6, 2008, Archer filed this lawsuit in Texas state court alleging that Mazda breached the June 1986 letter contract and asserting a promissory estoppel claim also based on the June 1986 letter. After Archer served Mazda on November 13, 2008, Mazda filed a timely Notice of Removal. Following an adequate time to complete necessary discovery, Mazda filed its Motion for Summary Judgment, asserting that Archer's claims are barred by the applicable four-year statutes of limitations. The Motion has been fully briefed and is ripe for decision.

## II.   STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*

*Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.  ANALYSIS

The parties correctly agree that the statutes of limitations for Archer's breach of contract claim and promissory estoppel claim are four years. *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (breach of contract); *Ambulatory Infusion Therapy*

*Specialist, Inc. v. North Am. Adm'rs, Inc.*, 262 S.W.3d 107, 119 (Tex. App. -- Houston [1st Dist.] 2008, no pet.) (breach of contract and promissory estoppel). A cause of action for breach of contract accrues when the contract is breached. *Ambulatory Infusion*, 262 S.W.3d at 119 (citing *Stine*, 80 S.W.3d at 592). A cause of action for promissory estoppel "accrues at the time the promisor breaches its promise to the promisee." *Bloom v. Burkholder Corp.*, 1995 WL 379272, *3 (Tex. App. -- Dallas 1995, no pet.) (citing *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965).

In this case, Archer's breach of contract and promissory estoppel claims are based on Mazda's June 1986 promise to "offer" the "next" Houston-area Mazda dealership to Archer. It is uncontested that Mazda offered the "next" Houston-area Mazda dealership to Joe Myers in 1990.[1] At that time, if at all, Mazda breached the June 1986 promise/contract and Archer's causes of action for breach of contract and promissory estoppel accrued. Archer's lawsuit, filed in October 2008, is barred by the applicable four-year statutes of limitations.

Archer argues that the offer and award of the Joe Myers dealership was contemplated by and excluded from the June 1986 contract by an oral side agreement. Archer argues that parol evidence may be used to establish an oral portion of a

---

[1] Mazda awarded a dealership to Don Elliot Mazda in 1987 and a dealership to Gulf Coast Mazda in 1989. It is unclear, and Mazda does not argue, that these two dealerships are "Houston-area" dealerships.

contract, "provided that it does not conflict or is not inconsistent with the contract's written provisions." *See* Response [Doc. # 33], pp. 8-9 (citing *Miller v. Vaughn & Taylor Constr. Co.*, 345 S.W.2d 79, 82 (Tex. App. -- Dallas 1944, writ ref'd)).

In this case, the oral portion of the contract as described by Archer is in conflict with and is inconsistent with the written terms of the June 1986 contract. The June 1986 letter specifically excludes four situations that were then in existence: "Marco's move to 290 and 6 area" and three other dealership moves. *See* June 1986 Letter, Exh. B to Motion. The new Joe Myers dealership awarded in 1990 was not in existence at the time of the June 1986 letter and was not mentioned in the June 1986 letter as an excluded dealership. Archer's argument requires the specific, written terms of the June 1986 letter to be rewritten so that "Marco" would be replaced by "any dealer," "move" would be replaced with "a new dealership established," and "290 and 6 area" would be replaced by "anywhere along Highway 290." Parol evidence is not admissible to alter the terms of a written contract. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008).

The clear and unambiguous terms of the June 1986 promise/contract were breached, if at all, when Mazda offered the "next" Mazda dealership to Joe Myers in 1990. Archer did not file this lawsuit until October 2008, well beyond the four-year statute of limitations.

Archer bases its breach of contract and promissory estoppel claims not on the offer and award of the Joe Myers dealership, but on the offer and award of the Russell & Smith dealership. Initially, the Court notes that it is undisputed that the Russell & Smith dealership was not the "next" Houston-area dealership offered by Mazda after the 1986 letter and there is no evidence of a promise/contract by Mazda to offer subsequent dealerships to Archer other than the "next" dealership after 1986.

Moreover, even if there were evidence of a promise that would be breached by offering a subsequent dealership to an entity other than Archer, Mazda offered the dealership to Russell & Smith in July 2004, more than four years before Archer filed this lawsuit in October 2008. Although Archer argues that the contract was not breached until the final dealership agreement was executed on October 8, 2004, the promise in the 1986 letter agreement was to "offer" the next Houston-area dealership to Archer, and it was Mazda's offer of the dealership to Russell & Smith that breached that agreement. As a result, the causes of action for breach of contract and promissory estoppel claims that rely on the Russell & Smith dealership accrued when the offer was made on July 29, 2004.

Although the Russell & Smith dealership was not the "next" Houston-area dealership and although Mazda offered the Russell & Smith dealership more than four years before Archer filed this lawsuit, Archer has pled that the accrual of its causes of

action was tolled based on the discovery rule.  In very rare cases, the discovery rule operates as an exception to the general accrual rule. *See, e.g.*, *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex. 1996).  The discovery rule applies only to matters that are inherently undiscoverable. *Johnson v. Abbey,* 737 S.W.2d 68, 69-70 (Tex. App. -- Houston [14th Dist.] 1987, no writ).  An injury is inherently undiscoverable if, by its very nature, it is unlikely to be discovered within the applicable limitations period notwithstanding the exercise of due diligence.  *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 734-35 (Tex. 2001). Whether an injury is inherently undiscoverable is determined on a categorical basis, because such an approach "brings predictability and consistency to the jurisprudence."  *See Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 122 (Tex. 2001).  Thus, the focus is on whether a type of injury, rather than a particular injury, was discoverable.  *Via Net v. TIG Ins. Co.,* 211 S.W.3d 310, 314 (Tex. 2006).

Although some contract breaches may be considered inherently undiscoverable, such cases are extremely rare because "diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims."  *See Compass Services, Inc. v. TRT Development Co.*, 2008 WL 4868349, *2 (Tex. App. -- Dallas 2008, no pet.) (citing *Via Net*, 211 S.W.3d at 315); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 229 (Tex. App. -- Houston [14th

Dist.] 2008 (no pet.). Because contracting parties are generally not in a fiduciary relationship, due diligence requires each party to protect its own interests. *Barfield v. Howard M. Smith Co. of Amarillo,* 426 S.W.2d 834, 840 (Tex. 1968).

In this case, the existence of the Russell & Smith dealership – and, therefore, the fact that Mazda had offered the dealership to Russell & Smith – was not inherently undiscoverable. The dealership was located on a major highway (South Loop West) and there is no allegation that it was not clearly visible to anyone driving by on the highway. Indeed, James E. Archer, president of Archer and "most active in Mazda operations," admitted in his affidavit that he saw the Russell & Smith dealership in early 2006 when he "chanced to drive by." *See* Affidavit of James E. Archer, Exh. A to Response, ¶ 17. A motor vehicle dealership located on a major highway in Houston, Texas, is not inherently undiscoverable. *See, e.g., Girsh v. St. John*, 218 S.W.3d 921, 928-29 (Tex. App. -- Beaumont 2007) (holding that discovery rule did not apply to cause of action for breach of contract because "the presence of a full-size mobile home on a lot in a populated residential subdivision" was not inherently undiscoverable).

Additionally, the offer of the dealership to Russell & Smith was a matter of public record with the Texas Department of Transportation, with whom Mazda filed the Evidence of Franchise form in August 2004. The availability of public records is

sufficient to render information discoverable. *See Shivers v. Texaco Exploration & Prod., Inc.,* 965 S.W.2d 727, 735 (Tex. App.--Texarkana 1998, pet. denied); *see also HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886-87 (Tex. 1998) (holding that cause of action was not inherently undiscoverable because government records were publicly available); *Choice Personnel No. Four, Inc. v. 1715 Johanna Square Ltd.*, 2007 WL 1153046, *7 (Tex. App. -- Houston [1st Dist.], 2007) (holding that discovery rule did not apply to conversion claim because plaintiffs "could have discovered their cause of action by the due diligence of visiting the property or examining [government] records").

Mazda has established that Archer's breach of contract and promissory estoppel claims accrued in 1990 when Mazda failed to "offer" the "next" Houston-area dealership to Archer but, instead, offered and awarded that dealership to Joe Myers. Even if the Court were to disregard that dealership offer and consider the 2004 offer to Russell & Smith as the "next" Houston-area dealership, Mazda has established that the causes of action accrued when the offer was made in July 2004 and that the existence of the Russell & Smith dealership was not inherently undiscoverable within the four-year statutes of limitations for breach of contract and promissory estoppel claims. As a result, the uncontroverted evidence establishes that Archer's claims are time-barred.

## IV.     CONCLUSION AND ORDER

Plaintiff's breach of contract and promissory estoppel claims are barred by the applicable four-year statutes of limitations.  As a result, it is hereby

**ORDERED** that Mazda's Motion for Summary Judgment [Doc. # 28] is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.  The Court will enter a separate final judgment.

SIGNED at Houston, Texas, this **17th** day of **September, 2009**.

_____
Nancy F. Atlas
United States District Judge